ROTH, Circuit Judge,
Concurring:
I concur with the result reached by the majority. I would, however, arrive there by a more arduous route. For reasons that I will explain below, I believe that strict scrutiny is the test to be applied here. In addition, I conclude that the assignment plan here meets the strict scrutiny test.
First, I agree with the holding of the District Court:
Applying strict scrutiny to [the facts of this case], the Court concludes that the District has satisfied its burden of showing that Plan 3R was narrowly tailored to meet numerous race-neutral compelling interests — namely, having two equally sized high schools, minimizing travel time and costs, maintaining educational continuity, and fostering students’ ability to walk to school. The District’s mere consideration of the racial demographics of Plaintiffs’ neighborhood does not warrant an opposite conclusion under existing Supreme Court or Third Circuit precedent.
Because Plan 3R is narrowly tailored to meet the school district’s compelling inter *559 ests, it survives strict scrutiny. In my view, however, there is a problem with my conclusion. I am not happy that the test for reviewing a plan to create diversity in a student body should be strict scrutiny. I believe that diversity is a worthy goal for student assignments in a school district. My concern is that Supreme Court precedent, and in particular the decision in Parents Involved in Community Schools v. Seattle School District No. 1, 551 U.S. 701, 127 S.Ct. 2738, 168 L.Ed.2d 508 (2007), does not permit a school district to institute a plan to diversify student populations of a school district on the basis of race.
In Part III.B of Seattle, Chief Justice Roberts, in his plurality opinion, concluded that school attendance plans “directed only to racial balance, pure and simple,” are illegitimate. Id. at 726, 127 S.Ct. 2738. The plurality goes on to ask how we differentiate between the benefits that flow from racial diversity and racial balance pure and simple. Id. My concern is that we will be unable to do so. For that reason, any plan for student diversity is faced with the threat of being held unconstitutional because we cannot compute the difference between racial diversity and racial balance.
Justice Kennedy, in his concurrence, endorses diversity as a compelling educational goal. Id. at 783, 127 S.Ct. 2738. He joins in the judgment, however, because the school district plans for diversity in Seattle were directed at individual students, not at neighborhoods as is the case here. Id. at 782, 127 S.Ct. 2738.
My concern is that the consideration of the racial composition of individual neighborhoods to determine school assignments may be just as problematic as the consideration of the race of individual students. Plan 3R does involve race: not the race of individuals but the racial balance of neighborhoods. An awareness of the racial make-up of the neighborhoods is a factor in the assignment plan. This consideration of the racial composition of neighborhoods is, in my opinion, a parallel to the consideration of the race of the individual. It in effect brings consideration of race back into the formula.
Moreover, the plaintiffs contend that Plan 3R discriminated against them because it mandated their attendance at a particular high school on the basis of their race. Although they were not individually assigned to a school, the court did find that plaintiffs’ race, through the racial composition of their neighborhoods, was a factor that was considered in determining their assignments. Furthermore, in making the Plan 3R assignments, the School District was attempting to improve on the racial diversity of its schools through its choice of the areas to be assigned to the high schools.
Nevertheless, I am convinced that, although racial diversity was an object of Plan 3R, it was not the racial composition of the neighborhoods that was the primary motive for the new assignment plan. I agree with the conclusion of the District Court, quoted above, that Plan 3R is narrowly tailored to meet race-neutral compelling interests and that it would have passed without a consideration of the racial make-up of the neighborhoods. All the same, race was a factor in the mix and diversity was a goal of Plan 3R. The conclusion I draw is that, when dealing with race-neutral compelling interests, the concurrent consideration of racial diversity (which of course must be race-based) does not invalidate a plan — but we need further guidance from the Supreme Court on this issue.
Finally, I believe that our decision in Pryor v. National Collegiate Athletic Association, 288 F.3d 548 (3d Cir.2002), holding that “a law or policy that purposefully discriminates on account of race is pre *560 sumptively invalid and can survive only if it withstands strict scrutiny review,” id. at 566, supports my conclusion that strict scrutiny review is required here. Indeed, I believe that this panel should be bound by Pryor.
For the above reasons, I agree that we should affirm the judgment of the District Court but I conclude that we should do so using strict scrutiny review.